IN THE COURT OF APPEALS

9/9/97

OF THE

STATE OF MISSISSIPPI

NO. 95-KA-00488 COA

DESMOND DURR APPELLANT

v.

STATE OF MISSISSIPPI APPELLEE

THIS OPINION IS NOT DESIGNATED FOR PUBLICATION AND

MAY NOT BE CITED, PURSUANT TO M.R.A.P. 35-B

TRIAL JUDGE: HON. BETTY SANDERS

COURT FROM WHICH APPEALED: SUNFLOWER COUNTY CIRCUIT COURT

ATTORNEY FOR APPELLANT: WARREN L. CONWAY

ATTORNEY FOR APPELLEE: OFFICE OF THE ATTORNEY GENERAL

BY: BILLY GORE

DISTRICT ATTORNEY: MICHAEL HORAN

NATURE OF THE CASE: CRIMINAL - FELONY - MANSLAUGHTER

TRIAL COURT DISPOSITION: MANSLAUGHTER, 15 YEARS (7 YEARS SUSPENDED)

MOTION FOR REHEARING FILED:9/24/97

PETITION FOR CERTIORARI FILED: 11/17/97

BEFORE BRIDGES, C.J., HINKEBEIN, AND KING, JJ.

HINKEBEIN, J., FOR THE COURT:

Desmond Durr [Durr] was convicted in the Sunflower County Circuit Court of manslaughter for having killed a fellow inmate while incarcerated at the state penitentiary in Parchman, Mississippi. Durr appeals to this Court asserting that the lower court committed the following reversible error:

I. THE COURT ERRED WHEN IT DISMISSED BLACK JURORS WHOM THE STATE PEREMPTORILY CHALLENGED, WITHOUT PROPER RACIALLY NEUTRAL REASONS.

II. THE COURT ERRED WHEN IT ALLOWED A WITNESS TO INSTRUCT THE JURY AS TO A MATTER OF LAW AND GIVE AN EXPERT OPINION AS TO AN ULTIMATE ISSUE OF FACT.

III. THE COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR A DIRECTED VERDICT.

IV. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-2 OVER THE OBJECTION OF THE APPELLANT.

V. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-3 OVER THE OBJECTION OF THE APPELLANT.

VI. THE COURT ERRED IN REFUSING DEFENDANT'S INSTRUCTION D-11 OVER THE OBJECTION OF THE APPELLANT.

Holding Durr's assignments of error to be without merit, we affirm the decision of the circuit court.

FACTS

This case involves a prison gang initiation ritual conducted in November of 1995 by inmates at the state penitentiary in Parchman, Mississippi. The victim of this crime, Jerry Larry, died while participating in a "ceremony" to initiate him into the ranks of a gang known as the "Black Gangster Disciples" [Disciples], who apparently have a contingent at Parchman. Neither the Disciples nor their initiation ritual is officially sanctioned by prison administrators. As part of the initiation ritual the candidate must endure numerous so-called "love licks" to the right chest area. These "love licks" are administered to the candidate by members of the gang. Normally the candidate receives thirty six blows to the chest, but in this case an exception was made for the victim, who was only given twelve. This decision to give the victim only twelve blows was made by the appellant, Durr, acting in his capacity as a so-called "zone enforcer" for the Disciples. It is unclear why Durr concluded that the victim needed to endure fewer blows than candidates were typically subjected to.

After Durr struck the victim twelve times in the chest, directly over the victim's heart, the victim fell face forward onto the floor. The other inmates called for help and a guard responded, administering cardiopulmonary resuscitation to the victim. The victim was subsequently treated by emergency medical personnel who transported him to a hospital for more sophisticated care. These efforts, however, were to no avail and the victim died of heart failure caused by the blows to his chest. Durr was subsequently indicted and tried for murder, but was convicted of the lesser offense of manslaughter predicated upon the unlawful act of simple assault. It is from this conviction that Durr appeals.

ANALYSIS

I. THE COURT ERRED WHEN IT DISMISSED BLACK JURORS WHOM THE STATE PEREMPTORILY CHALLENGED, WITHOUT PROPER RACIALLY NEUTRAL REASONS.

Durr contends that the race-neutral reasons offered by the State in defense of its peremptory strikes of two potential jurors were not sufficient to satisfy *Batson* requirements. Durr contends that the State's excuse that the potential jurors were unemployed and were "unknown" to local law enforcement officials was inadequate, particulary considering that an unemployed white person was subsequently seated on the jury. The State responds to Durr's allegation by claiming that the reasons offered were in fact legitimate race-neutral reasons. We agree with the State.

At trial the prosecution offered, *sua sponte*, to supply the court with race-neutral reasons for having used peremptory strikes to remove two potential jurors, apparently in a pro-active attempt to demonstrate that the United States Supreme Court's holding in *Batson v. Kentucky* had been complied with. *See Batson v. Kentucky*, 476 U.S. 79, 89 (1986) (holding that peremptory challenges of jurors based solely on racial considerations to be violative of Equal Protection Clause of Fourteenth Amendment to United States Constitution). Under our Supreme Court's holding in *Batson*, a defendant's[1] challenge to a peremptory strike involves a three-step process. First, the

defendant must establish a prima facie case of purposeful discrimination in the selection of jury members. To do this the defendant must show:

1. That he is a member of a "cognizable racial group";

2. That the prosecutor has exercised peremptory challenges toward the elimination of venire men of his race;

3. That facts and circumstances raised an inference that the prosecutor used his peremptory challenges for the purpose of striking minorities.

*Conerly v. State*, 544 So. 2d 1370, 1372 (Miss. 1989) (citing *Batson*, 476 U.S. at 96-97). Second, should the defendant make such a showing, the State must then provide a legitimate race-neutral reason for the challenged peremptory strike. *Batson*, 476 U.S. at 97. Third, the trial court must make a finding of fact to determine if, in spite of the allegedly race-neutral reason supplied by the State, the defendant has proved purposeful discrimination. *Batson*, 476 U.S. at 98.

Keeping in mind this three-part analysis, however, we must acknowledge the fact that some trial courts ignore the prima facie inquiry and require the State to provide race-neutral reasons to defend its peremptory strikes upon the defendant's mere assertion that racial discrimination motivated the State's strike. The Supreme Court has addressed this problem, stating that if the trial court ignores the prima facie case inquiry, and "rule[s] on the ultimate question of intentional discrimination, the preliminary issue of whether the defendant had made a prima facie showing becomes moot." *Hernandez v. New York*, 500 U.S. 352, 359 (1991). In the case at bar the State offered the allegedly race-neutral reasons on its own initiative, without Durr or the trial court having asked for them. In his brief on this appeal Durr states that he and the two jurors involved in the *Batson* challenge are black, although he concedes that this fact is not contained in the record. However, in light of the Supreme Court's holding in *Hernandez*, we shall proceed to review the trial court's ruling as if all the procedural steps of a proper *Batson* challenge had been complied with.

In determining if a race-neutral reason exists, the trial court's findings are reviewed with great deference "and will not be overturned unless there appears an error that is against the overwhelming weight of the evidence." *Harper v. State*, 635 So. 2d 864, 868 (Miss. 1994); *see also Hatten v. State*, 628 So. 2d 294, 299 (Miss. 1993) (holding that only clearly erroneous findings will be overturned on appeal). When analyzing a party's reason offered to defend a peremptory challenge objected to on *Batson* grounds, the proper inquiry is not whether the reason offered is reasonable, but whether or not it is genuine. *Purkett v. Elem*, 115 S.Ct. 1769, 1171-72 (1995). Perfectly sound reasons may be rejected by the trial court if found to be pretextual, and even "silly or superstitious" reasons, if honestly advanced, do not automatically fall before a *Batson* challenge. *Purkett*, 115 S.Ct. at 1171. Of paramount consideration is that the reasons offered need not "rise to the level justifying exercise of a challenge for cause." *Batson*, 476 U.S. at 97. The Supreme Court has made it clear that "[u]nless a discriminatory intent is inherent in the [party's] explanation, the reason offered will be deemed race-neutral." *Hernandez*, 500 U.S. at 360. This is a factual determination within the sound discretion of the trial court. *See Lockett v. State*, 517 So. 2d 1346, 1350 (Miss. 1987) (stating that trial court is "proper forum for resolution of factual controversies").

In the case at bar Durr has presented this Court with no evidence to demonstrate that the trial court

was clearly erroneous in accepting the reasons offered by the State. In addition to the fact that the potential jurors at issue were unemployed, the State argued that its contacts among the local law enforcement community were unable to provide any information about these two potential jurors. We hold this to be a legitimate race-neutral reason, as it seems perfectly reasonable that a prosecutor would use his resources among the local law enforcement community to gain as much information as possible about the prospective jurors. The fact that nothing was know about certain individuals in effect made them "wild cards" to the prosecutor, who was apparently unwilling to take any chances with jurors about whom the State knew nothing of their backgrounds other than the information contained on the jury questionnaire. Accordingly, it is the conclusion of this Court that the trial court was not clearly erroneous in finding that the employment/reputation among local law enforcement reason offered by the State was a legitimate race-neutral reason. *See Lockett v. State*, 517 So. 2d at 1356-57 (acknowledging employment history/status as potentially legitimate race-neutral reason for exercise of peremptory strikes of jurors). Durr's reference to an unemployed white person who was subsequently seated on the jury is irrelevant as the State indicated that it had reliable information from local law enforcement officials regarding this juror. We hold that these facts were sufficiently distinct from those involving the previously struck unemployed blacks, so as to negate any inference that race played a role in the State's exercise of peremptory strikes. This assignment of error is without merit.

## II. THE COURT ERRED WHEN IT ALLOWED A WITNESS TO INSTRUCT THE JURY AS TO A MATTER OF LAW AND GIVE AN EXPERT OPINION AS TO AN ULTIMATE ISSUE OF FACT.

Durr asserts that the trial court committed reversible error when it overruled his objection to Dr. Emilly Ward [Dr. Ward], a forensic pathologist, being allowed to testify that the manner of the victim's death was homicide. Durr contends that Dr. Ward should not have been allowed to testify that the death was a homicide, or that "according to the laws" a homicide is "a deliberate act of another individual that results in the death of the deceased." Durr contends that Dr. Ward was not accepted as an expert in the law, and her conclusion that a homicide had been committed "was not helpful to a determination of the case and was therefore not admissible." The State responds by conceding that Dr. Ward's testimony was an opinion as to an ultimate issue of the case, but that such testimony was admissible under Mississippi Rule of Evidence 704.

Rule 704 of the Mississippi Rules of Evidence states that "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Miss. R. Evid. 704. As such, Rule 704 abolishes the "ultimate issue rule" which existed under pre-Mississippi Rules of Evidence practice. Miss. R. Evid. 704 cmt. Under the ultimate issue rule opinion testimony that "invade[d] the province of the jury" was inadmissible." Miss. R. Evid. 704. This change from pre-rule practice, however, "does not result in the admission of all opinions." *Hart v. State*, 637 So. 2d 1329, 1338-39 (Miss. 1994). For an opinion to be admissible it remains "an absolute requirement under Rules 701 and 702 that opinions must be helpful to a determination of the case before they are admissible." *Hart*, 637 So. 2d at 1339. In addressing Rule 704, the Mississippi Supreme Court has stated that:

[e]very expert opinion embracing the ultimate fact is not per se admissible, however. The opinion still must be helpful to the trier of fact. Questions which simply allow the witness to tell the jury what

result to reach are impermissible, as are questions asking the witness for a legal conclusion.

*May v. State*, 524 So. 2d 957, 964 (Miss. 1988).

In the case at bar Dr. Ward was allowed to testify that the "manner of death [was] homicide" and to tell the jury that "according to the laws" a homicide is "a deliberate act of another individual that results in the death of the deceased." We hold that her testimony as to the manner of death was not helpful to the trier of fact; therefore, it was not admissible under Rule 704. While we would normally make an identical disposition of Dr. Ward's opinion concerning the legal definition of homicide, because Durr failed to object to this statement at trial he has waived the issue. *See Read v. State*, 430 So. 2d 832, 838 (Miss. 1983) (holding that issues not raised before trial court are waived). We will not hold a trial court in error for a matter which was never presented for its consideration. *Holland v. State*, 587 So. 2d 848, 868 n.18 (Miss. 1991). In analyzing Dr. Ward's opinion testimony regarding the "cause" and "manner" of the victim's death, we acknowledge that

she was bound by statue to make these conclusions and to record them on the death certificate. However, we must still address the admissibility of such conclusions.

At trial Dr. Ward testified that the "cause" of death was "cardiac concussion," a medical conclusion which was within her field of expertise to make and was helpful to the trier of fact. No error was committed in admitting such testimony into evidence. *See Whittington v. State*, 523 So. 2d 966, 976 (Miss. 1988) (holding admission of forensic pathologist's medical conclusion as to cause of death was permissible under Rule 704). The admission of Dr. Ward's testimony regarding the "manner" of death, however, is an entirely different matter. Under Mississippi law Dr. Ward was required to make a conclusion as to the "manner" of death when filling out death certificates. The choices provided by statute were "natural causes," "accidental," "suicide," "homicide," or "undetermined." To this Court it is readily apparent that determining the manner of death beyond the statutory requirement involves a significant inquiry into the non-medical facts surrounding a death. This is precisely the type of factual inquiry that the jury was charged with conducting. Accordingly, it is the opinion of this court that the statements the prosecutor elicited from Dr. Ward regarding the "manner" of death were factual conclusions, well beyond any medical conclusions offered to provide the jury with facts to aid it in resolving the issue. This was error, for it is the sole province of the jury to make factual conclusions regarding issues presented to it for determination. *Great Atl. & Pac. Tea Co. v. Mulholland*, 84 So. 2d 504, 508 (Miss. 1956).

However, merely because the trial court made an erroneous evidentiary ruling does not entitle Durr to "get out of jail free." *See Roundtree v. State*, 568 So. 2d 1173, 1180 (Miss. 1990) (holding error harmless unless outcome of case was affected); *see also Jackson v. State*, 645 So. 2d 921, 924 (Miss. 1994) (holding that evidentiary ruling must have resulted in denial of substantial right of defendant in order to be grounds for reversal). Because Durr has done nothing to show that the outcome of this case was influenced by the trial court's error, we hold it to be harmless. This assignment of error is without merit.

III. THE COURT ERRED WHEN IT OVERRULED APPELLANT'S MOTION FOR A DIRECTED VERDICT.

Durr argues that the trial court was in error when it denied his motion for a directed verdict. It is Durr's contention that because the victim consented to being struck in the chest, the blows he delivered to the victim were not an "unlawful act," i.e., his act of striking the victim did not constitute simple assault. Durr asserts that in order to be guilty of manslaughter the killing at issue must have been an "unlawful act," so if there was no simple assault (due to the victim's consent), then he can not be guilty of manslaughter. Durr concedes that he is unable to locate any Mississippi jurisprudence dealing with the issue of whether the victim's consent is a defense to a criminal charge.

The State responds by asserting that the victim's consent to the blows was not relevant to whether the jury could have reasonably found the State's evidence against Durr sufficient to satisfy the elements of simple assault. The State argues that under Mississippi law one of the avenues for obtaining a conviction for simple assault is by proving that the defendant "purposely, knowingly or recklessly cause[d] bodily injury to another," which it contends was easily satisfied by the evidence put on by the State in its case-in-chief. The State responds to Durr's argument regarding the victim's consent by asserting that even if the victim's consent was a defense to a criminal prosecution, in this case "the extent of the physical harm to [the victim], i.e., his sudden demise, far exceeded the terms of any consent." The State, however, cites no authority in support of this conclusion. According to the State, because Durr's actions amounted to the unlawful act of simple assault, the killing at issue was without authority of law, therefore constituting manslaughter.

Directed verdict and JNOV motions challenge the legal sufficiency of the evidence. *McClain v. State*, 625 So. 2d 774, 778 (Miss. 1993). With regard to the legal sufficiency of the evidence, all credible evidence consistent with the defendant's guilt must be accepted as true and the prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. *McClain*, 625 So. 2d at 778. This Court is authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987).

The record of the case at bar makes no mention as to which of Mississippi's numerous manslaughter statutes Durr was being prosecuted under. However, after careful review of the parties' arguments during the directed verdict motions, we have concluded that the State was prosecuting Durr under Section 97-3-47 of the Mississippi Code. Section 97-3-47 punishes as manslaughter "every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law . . . ." Miss. Code Ann. § 97-3-47 (Rev. 1994). The State argued that Durr's actions in striking the victim amounted to simple assault; therefore, the killing was committed "without authority of law." Section 97-3-7(1) of the Mississippi Code holds that "[a] person is guilty of simple assault if he . . . attempts to cause or purposely, knowingly, or recklessly causes bodily injury to another . . . ." Miss. Code Ann. § 97-3-7(1) (Rev. 1994). It is the opinion of this Court that the trial court was correct in denying Durr's motion for a directed verdict, as there was sufficient evidence to support the jury's finding of guilt.

At trial Durr admitted to having struck the victim in the chest with his fist, above the victim's heart. Durr and his trial counsel even went so far as to reenact the blows (using his attorney as the victim) in front of the jury. Durr subsequently testified that the in-court reenactment of the "love licks" was true to fact and that the actual blows inflicted upon the victim were no more severe than those demonstrated for the jury. We feel that this evidence alone was sufficient to support the jury's finding that Durr committed manslaughter, as it was his act of striking the victim without authority of law which resulted in the victim's death.

To argue that "no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty" is absurd. Clearly, striking a fellow human being's chest area over his heart with twelve blows from a curled fist, regardless of the victim's consent, could be interpreted by a reasonable juror as an "attempt[] to cause or purposely, knowingly, or recklessly cause[] bodily injury to another," thereby making Durr guilty of simple assault. Contrary to Durr's claim that the blows were "not too hard," it is this Court's opinion that a reasonable juror could have found that the blows were in fact too hard, and that the victim's death was the result of Durr's unlawful act. Accordingly, we hold that the victim's consent to being struck was not relevant to the disposition of this case because, as discussed above, even with the victim's consent to Durr pounding on his heart, Durr's actions amounted to the reckless infliction of bodily injury. Therefore, this Court need not address the general proposition of whether a victim's consent is a defense to a criminal prosecution. Because Durr's conviction was sufficiently supported by the State's evidence, which satisfied all essential elements of our simple assault and manslaughter statutes, this assignment of error is without merit.

## IV. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-2 OVER THE OBJECTION OF THE APPELLANT.

Durr argues that State's instruction S-2 was not a correct statement of the law regarding the crimes of simple assault or manslaughter and was not supported by the evidence. Durr contends that in addition to omitting several of the essential elements for manslaughter, neither S-2 nor any of the other instructions instruct the jury as to the elements of simple assault, which Durr contends "the jury must consider in its deliberations before it can properly return a verdict of manslaughter." As discussed in conjunction with Durr's third assignment of error, *supra*, Durr argues that the killing must have been an "unlawful act," i.e., that the State must prove that the killing occurred while Durr was committing a simple assault upon the victim, in order for the act of killing the victim to constitute manslaughter under the facts of this case. The State responds that instruction S-2 was a correct statement of the law and that it was supported by the evidence. According to the State the instruction was adequate and, based upon the overwhelming evidence of Durr's guilt, to affirm his conviction would not result in an injustice.

In considering this assignment of error we are mindful that "whether error lies in the granting or refusal of various instructions, the instructions actually given must be read as a whole. When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." *Hickombottom v. State*, 409 So. 2d 1337, 1339 (Miss. 1982). Accordingly, defects in specific instructions do not require reversal where all instructions taken as a whole fairly -- although not perfectly -- announce the applicable primary rules of law. *Collins v. State*, No. 94-KA-008550-SCT, 1997 WL 183892, *12 (Miss. April 17, 1997). The jury, however, must be correctly and fully

instructed regarding each element of the offense charged. *Hunter v. State*, 684 So. 2d 625, 636 (Miss. 1996). If those instructions do not fairly or adequately instruct the jury, this Court can and will reverse. *Collins*, 1997 WL 183892 at *12.

The jury instruction at issue read, in pertinent part, as follows:

[I]f you believe from the evidence in this case beyond a reasonable doubt that the [d]efendant, Desmond Durr, committed that act of striking [the victim] in the chest with fists, and if you further believe from the evidence in this case beyond a reasonable doubt that [the victim] died as a result of that act then it is your sworn duty to find [the defendant] guilty of the lesser included crime of manslaughter even though said act may have been committed without any premeditation design[ed] to effect the death of [the victim].

The statute under which Durr was apparently convicted of manslaughter was Section 97-3-47 of the Mississippi Code. Section 97-3-47 punishes as manslaughter "every other killing of a human being, by the act, procurement, or culpable negligence of another, and without authority of law . . . ." Miss. Code Ann. § 97-3-47 (Rev. 1994).

It is the opinion of this Court that instruction S-2, when read as a whole with the other jury instructions, fairly and adequately instructed the jury as to the essential elements of manslaughter. The instructions fairly announce the law on murder as well as manslaughter. In addition, the instructions submitted by the defendant and approved by the trial court further qualify the issues for consideration by the jury on both crimes. This assignment of error is without merit.

V. THE COURT ERRED IN GRANTING STATE'S INSTRUCTION S-3 OVER THE OBJECTION OF THE APPELLANT.

Durr argues that the trial court committed reversible error in admitting the State's instruction S-3 because the instruction "fail[ed] to go on to explain that consent can be a valid defense . . . ." It is Durr's contention that the proposition instruction S-3 stood for, i.e., that crimes are committed against the State rather than individual citizens, is an incorrect statement of the law. Durr, however, cites no relevant authority to support his argument. The State's position is that instruction S-3 "did not misstate the law."

The instruction in question provided that "[t]he [c]ourt instructs the [j]ury that all crimes are committed against the State of Mississippi and not against individual victims." Because Durr has failed to direct this Court to any relevant authority which would support his contention that instruction S-3 was a misstatement of the law, we decline to address the merits of his argument. *See Ferrill v. State*, 643 So. 2d 501, 508 (Miss. 1994) ( stating that court should decline to address issues on appeal for which no relevant supporting authority was offered); *Holmes v. State*, 483 So. 2d 684, 687 (Miss. 1986) (holding that general rule is that unsupported assignments of error are not considered on appeal). Accordingly, this assignment of error is without merit.

VI. THE COURT ERRED IN REFUSING DEFENDANT'S INSTRUCTION D-11 OVER THE

OBJECTION OF THE APPELLANT.

Durr argues that the trial court's refusal to submit his instruction D-11 to the jury constitutes reversible error. The essence of D-11 was that if the victim's death was "by accident and misfortune in doing any lawful act by lawful means . . . without any unlawful intent," then the killing was excusable. Durr once again asserts that his striking the victim was not a simple assault because of the victim's consent. Accordingly, Durr asserts that the victim's death occurred "in doing [a] lawful act by lawful means," so that his instruction was correct as a matter of law and was properly grounded in the evidence adduced at trial. The State responds to Durr's claim by arguing that the victim's consent to being struck was not relevant to whether Durr's actions constituted a simple assault under Section 97-3-7(1) of the Mississippi Code, or the resulting manslaughter conviction which was predicated upon the "unlawful act" of simple assault.

In order for a jury instruction to be given it must be a correct statement of the law and be supported by the evidence. *Murphy v. State*, 566 So. 2d 1201, 1206 (Miss. 1990) (holding that trial judge may refuse instruction which incorrectly states law or is without foundation in evidence). Furthermore, a trial court's failure to give a particular jury instruction "will not warrant reversal if the jury was fully and fairly instructed by other instructions." *Williams v. State*, 667 So. 2d 15, 24 (Miss. 1996). In reviewing a lower court's rulings on jury instructions the instructions given "are to be read as a whole and no one instruction is to be taken out of context." *Mackbee v. State*, 575 So. 2d 16, 34 (Miss. 1990).

Instruction D-11 read as follows:

The [c]ourt instructs the [j]ury that the killing of any human being by the act, procurement, or omission of another shall be excusable when committed by accident and misfortune in doing any lawful act by lawful means, with usual ordinary caution, and without any unlawful intent. If you find that [the victim] died at the hands of the defendant, Desmond Durr, and that [the victim's] death was the result of an accident and/or misfortune in doing a lawful act by lawful means with usual ordinary caution and without any unlawful intent then you must find the defendant, Desmond Durr, not guilty.

It is the holding of this Court that the trial court did not err in refusing to admit instruction D-11, as it was not supported by the evidence in the case at bar. As has been discussed in previous sections of this opinion, the evidence is clear that Durr's actions in striking the victim amounted to a simple assault under Section 97-3-7(1) of the Mississippi Code. Accordingly, Durr was not engaged in a "lawful act by lawful means . . . without any unlawful intent" when he caused the victim's death. This assignment of error is without merit.

**THE JUDGMENT OF THE SUNFLOWER COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER AND SENTENCE OF FIFTEEN (15) YEARS WITH SEVEN (7) YEARS SUSPENDED IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. COSTS ARE ASSESSED AGAINST SUNFLOWER COUNTY.**

**BRIDGES, C.J., McMILLIN AND THOMAS, P.JJ., COLEMAN, DIAZ, HERRING, KING, PAYNE, AND SOUTHWICK, JJ., CONCUR.**

1. While the instant case involves a *Batson* challenge in the context of a criminal prosecution, it should be made clear that *Batson* applies equally to civil cases. *Dedeaux v. J.I. Case Co.*, 611 So. 2d 880,883 (Miss. 1992). Additionally, any party to the case has standing to raise a *Batson* challenge. *Edmonson v. Louisville Concrete Co.*, 500 U.S. 614, 630 (1991).